THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

THE ESTATE OF JAMES OWENS, JR.,

    Plaintiff,

vs.                                                                        CASE NO. CV-05-J-2361-NE

INTERNATIONAL PAPER
CORPORATION, et al.,

    Defendants.

## MEMORANDUM OPINION

The plaintiff filed the complaint in this action in state court, asserting that defendants Kenneth Owens and Randie Braden received insurance proceeds from the decedent as the result of undue influence, fraud and coercion. Complaint, at 2. The plaintiff further alleged that defendant International Paper Corporation ("IP") breached an implied contract of reasonable care in allowing the decedent to change the named beneficiaries for this policy without witnesses or notarization and by allowing the form used for this purpose to be signed outside the presence of officials. Complaint, at 2.

The complaint asserts causes of action for undue influence (Count I), breach of implied contract (Count II), and fraud (Count III). Defendant IP removed the case from state court based on this court's exclusive jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"). The plaintiff never amended

the complaint to state a claim under ERISA. However, the court shall interpret the complaint as attempting to state a claim again IP for a breach of its duties under ERISA as the Plan Sponsor and Administrator. Now pending before the court is defendant IP's motion for summary judgment and memorandum brief and evidence in support of said motion (doc. 11). The plaintiff failed to respond to said motion in a timely fashion,[1] but nevertheless, defendant IP filed a reply (doc. 20).

Upon consideration of the pleadings, memoranda of the defendant and evidentiary submissions received, the court concludes that defendant IP's motion for summary judgment is due to be granted as no genuine issues of material fact exists against that defendant.[2]

**FACTUAL BACKGROUND**

This is an ERISA case concerning life insurance benefits. The decedent was a long time employee of defendant IP and had a life insurance policy through a benefit plan sponsored by IP. Declaration of William Webb, ¶¶ 7, 8. Plaintiff asserts that the two individual defendants forged decedent's name on a change of beneficiary form for the proceeds of that life insurance policy, so that defendant Kenneth Owens,

---

[1] Pursuant to Exhibit A to the court's Scheduling Order entered January 4, 2006, the plaintiff had until August 16, 2006, to respond to the defendant's motion for summary judgment. To date, no response has been received.

[2] Defendant Kenneth Owens also filed a motion for summary judgment (doc. 17). For the reasons stated below, the court has not reached the merits of this motion.

decedent's cousin, would receive fifty percent of the $200,000 policy. Complaint, ¶ 4; Miller-Ray decl., ¶ 4; IP00182; Smith depo. at 31-32. The estate is being administered by Dorothy Owens Smith, who is decedent's sister. Smith depo. at 16.

James Owens, Jr., died in November 2002. He worked for Champion, which was purchased by defendant International Paper in 2000. Declaration of Webb, ¶ 8 n. 1. Defendant International is the administrator and sponsor of the Plan. IP00265. The policy in question is a group insurance policy issued by Met Life.[3] *See* IP00277; IP00292. Defendant Kenneth Owens is also an employee at IP. Miller-Ray depo. at 12.

The policy states that the administrator (IP's Senior Vice-President of Human Resources) has discretionary authority to interpret terms of the plan, to determine eligibility for and entitlement to plan benefits and that any interpretation shall be given full force and effect, unless shown to be arbitrary and capricious. IP00265; IP00291. However, IP delegated authority, responsibility and discretion to make determinations of benefits eligibility to MetLife. IP00266; Presite declaration, ¶ 5.

On May 28, 2001, decedent and defendant Kenneth Owens went to IP's office and asked Human Resources Assistant Ussery Miller-Ray for a life insurance

---

[3]MetLife is not a party to this suit.

beneficiary change form.[4]  Declaration of Miller-Ray, ¶ 4.  At that time, Miller-Ray had known decedent for more than twenty years and did not think he appeared to be in any distress.  Miller-Ray decl., ¶ 6; Miller-Ray depo. at 11.  She has also known defendant Kenneth Owens for at least fifteen years.  Miller-Ray depo. at 11.  Miller-Ray heard decedent tell defendant Owens to fill out the form and to sign the form on decedent's behalf.  Miller-Ray decl., ¶¶ 7-8.  Defendant Owens asked Miller-Ray if he could sign the form for decedent.  Miller-Ray depo. at 15.  She specifically asked decedent if the change reflected on the form was what he wanted and he replied, "yes."  *Id.*  Upon completion of the change of beneficiary form, defendant Owens was to receive one half of the insurance proceeds and decedent's children were to receive the other half.  IP00179.

   Miller-Ray believed decedent was of sound mind at the time, did not note any tension between him and Kenneth Owens, and had no reason to think decedent did not understand what he was doing.  Miller-Ray depo. at 19.  Defendant IP asserts that decedent was competent at the time in question.  Plaintiff Smith, administratrix of the estate, similarly admits that decedent was competent prior to his death.  Smith depo. at 30.

---

[4]Previously, decedent's spouse and children were named beneficiaries.  IP00206.  However, at the time the change of beneficiary form was completed, decedent was no longer married.  *See* IP00190-191.  At one time, decedent had also named his mother and his spouse beneficiaries.  IP00198.

According to Dorothy Smith, decedent was not able to take care of his own affairs in 2001 because "his sight was gone, and he had – his legs were so bad that he couldn't walk ... and he was weak.  He had – his heart was bad."  Smith depo. at 22.  He had a prior heart attack.  *Id*. at 22.  She then states that he could walk on his own, but used a "stick."  *Id*. at 23.  He gave up driving because of his vision, probably in 2001.  *Id*. at 23-24.  When asked about his mental condition in 2001, Smith replied that decedent had trouble sleeping because he did a lot of coughing.  *Id*. at 28.  She admits he was oriented, knew his family members, and paid his own bills (with cash).  *Id*. at 28-29.  She states he was "definitely competent" in 2001.  *Id*. at 30.  However, she asserts that Kenneth Owens "got control of my brother's mind."  *Id*. at 56.  She states that Kenneth Owens and Braden knew her brother's weaknesses and that is how they exerted undue influence over him.  *Id*. at 58-59.  When asked why she believed this, she stated that decedent did not understand a lot of things.  *Id*. at 58-59.

Smith asserts that because decedent stated he wanted his mother taken care of, his mother was supposed to have been named the beneficiary.  Smith depo. at 30-31, 64-66.  Instead, defendant left 50% of the proceeds to defendant Kenneth Owens and 50% of the proceeds to his children.[5]  IP00179; Presite declaration, ¶ 11.  The 50%

---

[5]In turn Kenneth Owens paid over the $92,255.00 he received to Randie Braden.  According to Smith, this was a woman decedent was dating prior to his divorce from Elevina Owens and continued to date until his death.  Smith depo. at 35-36.  Six or eight months before his death, decedent bought a house for them to live in together.  *Id.* at 36-37.  Smith went to visit

share of the proceeds left to his children has not been challenged.  Smith knew that no one from her family called IP or MetLife to try to stop the payment of benefits and no one challenged the payment.  Smith depo. at 60-61, 69.  No one else filed a claim for benefits.  *Id*. at 67.

Defendant IP sent a beneficiary life insurance claim form to defendant Kenneth Owens and to decedent's daughter Latasha Owens in December 2002, after learning of decedent's death.  Webb decl., ¶ 12.  MetLife, which insures the Plan, received these documents and thereafter issued checks for the full $200,000 in accordance with the stated percentages to the named beneficiaries.  Presite decl., ¶¶ 11-12; IP00186-187, 00266.  No one else, including plaintiff, filed a claim for the benefits and no one asked for review of the benefits paid.  Presite decl., ¶¶ 13-14.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

twice in this time period. *Id.* at 37.  However, she previously testified that she saw decedent every day because he lived with their mother. *Id.* at 16.  She was specifically asked if he lived anywhere else and did not mention that he lived with Braden. *Id.* at 16-17.  Still later in her deposition, Smith mentions that the mobile home on the land decedent bought to live on with Braden was directly behind her house. *Id.* at 43-44.  Braden is still in this home. *Id.*. at 44.

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.Pro 56(e). In meeting this burden, the nonmoving party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

## LEGAL ANALYSIS

According to defendant IP, this action actually arises pursuant to 29 U.S.C. § 1132(a)(1)(B), which allows a plan participant or beneficiary to sue to recover benefits due him under the terms of the plan. Defendant IP asserts that all claims against it are due to be dismissed because the plaintiff failed to state a claim under ERISA and failed to exhaust its administrative remedies; defendant IP acted in good faith, and its decision to pay benefits was not arbitrary and capricious; the plaintiff has no proof of

fraud or coercion the part of IP; and the plaintiff is estopped from claiming entitlement to the proceeds because of delay in notifying IP of its claim to the benefits.

The court has stated its intent to infer a claim under ERISA. However, even finding such a claim, the plaintiff cannot prevail because of its failure to exhaust its administrative claims. When a claim is denied under the plan, a claimant/beneficiary can request review by MetLife within 60 days of the denial of the claim. IP00291. The plaintiff failed to do so, which is a prerequisite to suit under the law of this circuit. *Counts v. American General Life and Accident Insurance Co.*, 111 F.3d 105, 107 (11th Cir.1997). See also *Springer v. Wal-mart Associates' Group Health Plan*, where the Eleventh Circuit stated that "[i]t is well-established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court...." *Springer*, 908 F.2d 897, 899 (11th Cir. 1990); citing *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir.1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986) (other citations omitted). The Eleventh Circuit has stated that exceptions to the exhaustion requirements do exist, most notably when such exhaustion would be futile or the remedy inadequate. *Springer*, 908 F.2d at 899; citing *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990). See also *Stephenson v. Provident Life & Accident Ins. Co.*, 1 F. Supp.2d 1326, 1332

(M.D.Ala.1998) ("The purpose of requiring the exhaustion of administrative remedies is the prevention of what [the plaintiff] has attempted in this action; namely, the bypass of the appeal procedure provided for in her Plan"). However, the plaintiff here has made no showing that an appeal to MetLife would be futile. Therefore, the failure to exhaust administrative remedies is fatal to plaintiff's claims under ERISA.

Additionally, IP delegated the fiduciary authority, responsibility, and discretion to make determinations on whether claims should be paid to MetLife. IP00266. The plaintiff has provided no evidence to the court that MetLife knew, should have known, or should have even had a reason to inquire as to whether the signature on the change of beneficiary form in question was coerced. Therefore, even if plaintiff had stated a claim under ERISA, and even if the plaintiff had named MetLife as a defendant, the court would be of the opinion that the decision of MetLife to pay benefits was not "wrong." See *Williams v. BellSouth Telecommunications, Inc*,. 373 F.3d 1132, 1138 (11th Cir.2004);  *HCA Health Systems v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir.2001).

## CONCLUSION

Having considered the foregoing, the court is of the opinion that the defendant IP's motion for summary judgment is due to be granted as no genuine issues of

material fact remain for trial and this defendant is entitled to judgment in its favor as a matter of law.

It is therefore **ORDERED** by the court that defendant IP's motion for summary judgment be and hereby is **GRANTED**.

The court has also considered the plaintiff's state law claims against resident defendants Kenneth Owens and Randie Braden. The court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Because resolution of these claims of the plaintiff's complaint depend on determinations of state law, those claims are best resolved by the Alabama courts. *See Baggett v. First National Bank of Gainesville,* 117 F.3d 1342, 1352-1353 (11th Cir.1997). The court shall therefore remand these claims to state court by separate Order.

**DONE** and **ORDERED** this the 23rd day of August, 2006.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE